United States District Court
Southern District of Texas

**ENTERED**
May 08, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUHAMAD QUAMAR, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-00814 |
| | § | |
| HOUSTON HOUSING AUTHORITY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Houston Housing Authority's ("HHA")

motion to dismiss Plaintiff Muhamad Quamar's ("Quamar") second amended complaint

for failure to state a claim. (Dkt. 27). Having carefully reviewed the pleadings and

applicable law, the motion to dismiss is **GRANTED**.

### I.    FACTUAL BACKGROUND

Quamar is an Asian American Muslim and employee of HHA. (Dkt. 25 at ¶ 3.1).

On November 30, 2020, Quamar submitted a request to HHA's Human Resources

Department ("HR") for a hardship withdrawal request from his pension. (*Id.* at ¶ 6.11). By

December 8, 2020, Quamar did not know the status of his request, and he was then

informed that his application was sent to the Director of HR, Dianne Mitchel ("Mitchel").

(*Id.* at ¶ 6.11). Quamar sent emails to Mitchel over the next several days, and when Quamar

asked for updates, he was ignored. (*Id.* at ¶ 6.11).

On December 14, 2020, Quamar spoke with Mitchel by phone, and he noticed that someone other than Mitchel was also on the call. (*Id.* at ¶ 6.12). Quamar asked who was listening to the conversation and learned that HHA's General Counsel, Keland Lewis ("Lewis"), was participating. (*Id.*). Quamar refused to discuss his request in Lewis's presence. (*Id.*). Mitchel followed up with Quamar by email and carbon copied Lewis. (*Id.* at ¶ 6.13). Subsequently, Quamar filed a complaint against Mitchel and Lewis for alleged violations of "the Privacy Act and Invasion of Privacy, Discrimination, Aiding and Abetting in Discrimination[,] Harassment, Intimidation, Retaliation, [and] Breach of Personal Information." (*Id.* at ¶ 6.8).

On May 10, 2022, nearly a year and a half later, Quamar submitted a second request to HR for a financial hardship withdrawal from his 401(k). (*Id.* at ¶ 6.5). This time Quamar explained to HR that he wanted this request to be kept "confidential." (*Id.*). When HR emailed Quamar to ask him for documents to process his request, Quamar noticed that Lewis was again included in the email thread. (*Id.* at ¶ 6.7). Quamar responded and asked why Lewis had been included over his request to keep matters confidential. (*Id.*). Lewis replied directly to Quamar and informed him that Mitchel was away from work, so he was assisting in her stead. (*Id.*).

On August 18, 2021, HR sent an email to all employees informing them that two individuals in the building tested positive for COVID-19. (*Id.* at ¶ 6.14). HR further explained to the employees that if they had not been contacted by someone in HR, then there was no reason to suspect that they were in close contact with either of the two

individuals who tested positive for the virus. (*Id.*). Quamar contracted COVID-19 and experienced symptoms that caused him to take a leave of absence from work under the Family Medical Leave Act ("FMLA"). (*Id.* at ¶ 6.9). Quamar did not quarantine before learning he was positive, and the virus spread to his entire family which put them at "risk of loss of lives." (*Id.* at ¶ 6.15). Quamar later learned that one of the employees who tested positive worked in his department in close quarters with him. (*Id.*). Upon returning to work from leave, Quamar believed that a manager created a hostile work environment, which he reported to HR, but the problem went unresolved. (*Id.* at ¶ 6.10).

In October 2022, another manager of HHA, Mitchel Sykes ("Sykes"), asked Quamar whether he was "collecting human dust in a cup." (*Id.* at ¶ 6.16). At other times, Sykes "repeatedly brought up [Quamar's] race and made funny comments." (*Id.*). On October 13, 2022, Quamar filed a complaint against Sykes. (*Id.* at ¶ 6.17).

Quamar continues to work for HHA. (*Id.* at ¶ 3.1).

## II.  PROCEDURAL POSTURE

Quamar filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"). (Dkt. 27-1). Quamar complained that HHA retaliated and discriminated against him by the way it processed his requests for hardship withdrawals and exposed him to COVID-19. (*Id.* at p. 1). Quamar did not, however, complain about harassment or a hostile work environment. The EEOC issued a right-to-sue letter. (Dkt. 25 at ¶ 7.3). Quamar also requested a right-to-sue letter from the TWC. (*Id.* at p. 11). Quamar subsequently filed this lawsuit against HHA and

Lewis in the 234th Judicial District of Harris County, Texas, alleging violations of Chapter 21 of the Texas Labor Code, the Civil Rights Acts of 1964 and 1991, and Internal Revenue Service ("IRS") regulations. (Dkt. 1-1; Dkt. 1-2 at p. 2; Dkt. 1-3 at p. 2). HHA removed the lawsuit to this Court with Lewis's consent. (Dkt. 1-1).

Pursuant to this Court's procedures, HHA filed a letter requesting a pre-motion conference to discuss filing a motion to dismiss for failure to state a claim. (Dkt. 8). The Court held a pre-motion conference and permitted Quamar to file an amended complaint (Dkt. 10). Quamar, proceeding pro se, filed an amended complaint, and HHA moved to dismiss under Rule 12(b)(6). (Dkt. 13; Dkt. 14). Quamar responded in opposition to the motion to dismiss. (Dkt. 17). The Court held another pre-motion conference and permitted Quamar another opportunity to amend his complaint. (Dkt. 24). Quamar filed a second amended complaint ("Complaint") soon thereafter, and HHA filed another motion to dismiss. (Dkt. 25; Dkt. 27). To date, Quamar has not responded. HHA's motion is ripe for decision.

### III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings. A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011).

Courts construe pleadings filed by pro se litigants under a less stringent standard of review. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Under this standard, a document filed *pro se* is to be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Erickson v. Pardus*, 551 U.S. 89, 94 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). A complaint that offers only labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient. *Id.* Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 55 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 55 U.S. at 678.

Before a court dismisses a pro se complaint under Rule 12(b)(6), the plaintiff should generally be given an opportunity to amend. *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th

Cir. 1998). The court, however, need not provide an opportunity to amend when the plaintiff has been previously given the opportunity to allege his "best case." *Id.*

## IV.   ANALYSIS

### A. Lewis as a Party

Quamar appears to bring each of his causes of action against both HHA and Lewis. (Dkt. 25 at ¶ 8.2). HHA argues that Quamar's claims against Lewis are in his official capacity, so they should be dismissed.

It is well-settled in the Fifth Circuit that "outside of an action against an officer personally, a plaintiff does not have an action against both the corporation and its officer in an official capacity." *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985). The Fifth Circuit has also expressly stated that "a party may not maintain a suit against both an employer and its agent under Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *see also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."). It is clear from Quamar's allegations against Lewis that the actions made the basis of this lawsuit were solely in the scope of Lewis's role as General Counsel for HHA. As such, the Court finds that the suit is brought against Lewis in his official capacity and the claims are redundant to the claims against HHA. The claims against Lewis will be DISMISSED.

## B. Title VI—Discrimination

A liberal review of Quamar's complaint reveals that he brings claims for unlawful discrimination based on his race, color, and religion under Title VII and Chapter 21.[1] Title VII prohibits discrimination by an employer against its employee "because of such individual's race, color, [or] religion…." 42 U.S.C. § 2000e-2; *see also Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447, 470 (2023). A plaintiff establishes a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside that protected group or was treated less favorably than someone outside the protected group. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (internal citation and quotations omitted).

But a plaintiff bringing a Title VII disparate treatment claim is not required to satisfy each prong of the prima facie test at the pleading stage. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Instead, he must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). There are two ultimate elements to support a

---

[1] Chapter 21 was "modeled after federal civil rights law" and has policies with the express purpose of executing Title VII. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Texas courts "look to analogous federal precedent for guidance when interpreting Chapter 21. *Id.* (citations and quotation mark omitted). As such, the Court will analyze Quamar's Chapter 21 discrimination claims under federal law.

disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken

against a plaintiff "because of [his] protected status." *Raj*, 714 F.3d at 331 (quoting *Kanida*

*v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004)).

Relying on the Fifth Circuit's decision in *Welsh v. Fort Bend Indep. Sch. Dist.*, 941

F.3d 818, 824, (5th Cir. 2019), HHA argues that Quamar cannot establish that he suffered

an "adverse employment action" because such actions include only "ultimate employment

decisions such as hiring, granting leave, discharging, promoting, or compensating." (Dkt.

27 at p. 14). And Quamar did not, according to HHA, plead facts to show an adverse

employment action. (Dkt. 27 at p. 14). But last year the Fifth Circuit summarily repudiated

the standard HHA advocates for, "hold[ing] that a plaintiff plausibly alleges a disparate-

treatment claim under Title VII if she pleads discrimination in hiring, firing, compensation,

or the 'terms, conditions, or privileges' of her employment. She need not also show an

'ultimate employment decision….'"). *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir.

2023) (en banc). As such, Quamar need not plead that he sustained an ultimate employment

decision but may state a claim for disparate treatment by adequately alleging that he

suffered an adverse employment action because of his race, color, or religion.

With the appropriate standard clarified, the Court nevertheless concludes that

Quamar has not pled an adverse employment action because of a protected characteristic

under Title VII. Quamar's allegations center around the way HHA processed his request

to withdraw from his 401(k) plan through a third-party administrator and exposed him to

COVID-19. He complains about the amount of time the process took, ultimately taking

issue with the "several days" that elapsed between his request and a response. Quamar also appears to allege that Lewis, HHA's General Counsel, should not have been included in his "confidential" request to utilize his benefit plan and doing so was unlawful. As alleged, HHA's actions have nothing to do with Quamar's race, color, or religion. Indeed, Quamar's Complaint only makes a single reference to his race and religion and no reference whatsoever to his color or anyone else's race, color, or religion. Quamar has not satisfied his burden to articulate the "ultimate elements" of a Title VII disparate treatment claim and dismissal is appropriate. *See Raj*, 714 F.3d at 331; *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010).

### C.  Title VII—Hostile Work Environment

In addition to prohibiting certain forms of discrimination, "Title VII prohibits the creation of a hostile work environment." *Vance v. Ball St. Univ.*, 570, 421, 428, 133 S.Ct. 2434, 2441, 186 L.Ed.2d 565 (2013). A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002).

HHA argues that Quamar cannot bring a hostile work environment because of his failure to exhaust administrative remedies. The Court agrees.

Under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. As the Fifth Circuit has explained, "[o]rdinarily,

an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.' " *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)); *see also Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). "Although courts read the EEOC charges rather broadly to determine what EEOC investigations it can reasonably be expected to trigger, a failure to reference a claim in that charge may defeat that claim." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010) (quotations omitted).

The question before the Court is whether a hostile work environment claim can reasonably be expected to grow out of Quamar's allegations.[2] The answer is: it cannot. Quamar references three categories of events—how HHA handled his requests for a hardship withdrawal from his 401(k), exposing him to COVID-19, and the comments from Sykes and work environment created by another manager. The charge of discrimination contains no allegations of a work environment permeated with hostility on the basis of race, color, or religion; there are no alleged derogatory comments tethered to a protected characteristic; there is nothing to show any threats, insults, or ridicule; and Quamar's charge did not mention harassment or a hostile work environment. Based on a review of Quamar's EEOC charge, the Court concludes that Quamar did not exhaust his hostile work

---

[2] On a motion to dismiss, the court may consider the complaint and attachments that are incorporated into the complaint and also take judicial notice of matters. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

environment claim. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir.
2009).

### D. Title VII—Retaliation

Title VII also forbids an employer from discriminating against an employee because
that individual opposed any practice made unlawful by Title VII, or made a charge,
testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C. §
2000e-3(a). The elements of a prima facie retaliation claim are: (1) the plaintiff engaged in
a protected activity; (2) the plaintiff suffered an adverse employment action; and (3) a
causal link exists between the protected activity and the adverse employment action.
*Stewart*, 586 F.3d at 331.

Under Title VII, a "protected activity" for the purposes of a retaliation claim
includes any opposition to any practice rendered unlawful by Title VII, including making
a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing
under Title VII. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th
Cir. 2022). The Supreme Court held in *Burlington Northern & Santa Fe Railway Co. v.
White* that Title VII's anti-retaliation provision covers those adverse employer actions that
would be "materially adverse" to a reasonable employee. 548 U.S. 53, 57, 126 S.Ct. 2405,
2409, 165 L.Ed.2d 345 (2006). The *Burlington* Court defined "materially adverse" actions
as those which, in the context of a particular case, were harmful to the point that they could
well dissuade a reasonable worker from making or supporting a charge of discrimination.
*Id.*, 548 U.S. at 68, 126 S.Ct. at 2415. While a helpful guide to the Court, "a plaintiff need

not make out a prima facie case of [retaliation] in order to survive a Rule 12(b)(6) motion to dismiss," *Raj*, 714 F.3d at 331, but instead must plead facts that going to the ultimate elements of the claim, *Wright v. Union Pacific R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021).

### 1.    Protected Activity

HHA argues that Quamar did not engage in protected activity because requiring a 401(k) hardship withdrawal or submitting a complaint to HR alleging violations of privacy do not fall within Title VII's ambit. (Dkt. 27 at p. 11). HHA also urges that "while Plaintiff alleges in a conclusory fashion that Plaintiff filed a complaint with HR regarding 'harassment, intimidation, bullying and false accusations,' Plaintiff fails to allege any facts to show that the alleged harassment, intimidation, and bullying were based upon any characteristic protected by Title VII—i.e., Plaintiff's race, color, sex, religion, or national origin." (*Id.*).

There are three complaints to HR alleged. Quamar claims that he reported Mitchel and Lewis, complained about an unnamed manager, and reported Sykes. Quamar reported Mitchel and Lewis to HR "for violations of the Privacy Act and Invasion of Privacy, Discrimination, Aiding and Abetting in Discrimination Harassment, Intimidation, Retaliation, [and] Breach of Personal Information." (Dkt. 25 at ¶ 6.8). Quamar reported the unnamed manager for creating a hostile work environment, "intimidation," and "hostile behavior." (*Id.* at ¶ 6.10). The allegations against Mitchel, Lewis, and the unnamed manager are vague and conclusory because they make no reference to the type of conduct Quamar was opposing or complaining of. *See Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th

Cir. 2015) ("'[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.'"); *Davis v. Tex. Health and Human Servs. Comm'n*, 761 F. App'x 451, 455 (5th Cir. Mar. 21, 2019) (allegations of multiple grievances complaining of supervisor's "discriminatory conduct" were insufficient to state Title VII retaliation claim). The Court agrees with HHA that these allegations fail to establish protected activity with respect to the incidents regarding Mitchel and Lewis and the unnamed manager.

But HHA overlooks Quamar's allegations concerning Sykes. Quamar alleges that "Sykes has also repeatedly brought up [his] race and religion and made funny comments." (Dkt. 25 at ¶ 6.16). Quamar's very next allegation in the Complaint is that he reported Sykes to HR. (*Id.* at ¶ 6.17). There is a reasonable inference that Quamar's complaint about Sykes to HR was about Sykes's alleged comments about Quamar's race and religion. The Court finds that Quamar's allegations are sufficient to show protected activity through his complaint to HR regarding Sykes. *See, e.g., Turner v. Jacobs Eng'g Grp., Inc.*, 470 F. App'x 250, 252 (5th Cir. 2012).

### 2.   Adverse Employment Action

HHA contends that Quamar has not pled an adverse employment action because nothing he complains of would have dissuaded a reasonable employee from making or supporting a charge of discrimination. (Dkt. 27 at p. 20). Taking the allegations as true, as the Court must at this stage, Quamar's contention that HR intentionally did not notify him regarding his exposure to COVID-19, which Quamar alleges put his family at "risk of loss

of lives" and sidelined him from work on FMLA leave due to an illness, would dissuade a reasonable employee from opposing discrimination. The Court finds that Quamar successfully alleges an adverse employment action.

### 3. Causal Connection

Regarding a causal connection between the protected activity and the adverse employment action, HHA maintains that Quamar pleads no facts that any complaint was the "but-for" cause of any harassing or hostile behavior or that HR caused Quamar and his family to contract COVID-19. (Dkt. 27 at pp. 20-21).

As an initial matter, "[t]he causal link required by the third prong of the prima facie case does not rise to the level of a 'but for' standard." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). "Instead, at the prima facie case stage, a plaintiff can meet his burden of causation by showing close enough timing between his protected activity and his adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (cleaned up) (citation omitted). However, there can be no causal connection when the adverse employment action complained of precedes the protected activity.

The Court has determined that Quamar adequately alleges one instance of protected activity: when he complained about Sykes on October 13, 2022. The Court has also found that Quamar sufficiently alleged one adverse employment action: HHA intentionally exposing Quamar and his family to COVID-19, which purportedly occurred in August 2021, *i.e.*, before the protected activity on October 13, 2022. As such, Quamar's retaliation claim cannot survive. *See, e.g., Chhim*, 836 F.3d at 472 (concluding complaint failed to

14 / 16

state a claim for retaliation when the adverse action occurred before the protected activity);

*Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 339, 341 (5th Cir. 2014) (events occurring

before filing of internal grievance "do not have 'a causal connection between the protected

activity and the adverse employment action.'"), *cert. denied*, 135 S.Ct. 2814 (2015);

*Vasquez v. Nueces Cnty., Tex.*, 551 F. App'x 91, 93 (5th Cir. Dec. 19, 2013) ("Because

Vasquez did not file her grievances … until after her termination, she did not suffer an

adverse employment action in retaliation for filing them").

The Court finds that Quamar has not adequately alleged claims for discrimination,

hostile work environment, or retaliation. These claims will be DISMISSED.

### E.  Treasury Regulation

The IRS promulgates Treasury regulations governing hardship distributions from

401(k) plans. *See* 26 C.F.R. § 1.401(k)-1(d)(3)(i). Quamar attempts to bring a cause of

action under one of these regulations.[3] However, multiple circuit courts, including the Fifth

Circuit, have held that there are no substantive rights or a private cause of action under §

401 of the IRS regulations. *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir.

1996); *Reklau v. Merchants Nat. Corp.*, 808 F.2d 628, 631 (7th Cir. 1986), *cert. denied*,

481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987); *Cowan v. Keystone Employee*

*Profit Sharing Fund*, 586 F.2d 888, 890 n.3 (1st Cir. 1978). The Court will DISMISS this

claim.

---

[3] Quamar's causes of action also list a violation of "Section 13A-11-8," however, Quamar fails to describe what law he invokes, and the Court is otherwise unable to discern the viability of this purported cause of action. To the extent Quamar attempts to plead a separate cause of action, it is unsuccessful and fails to state a claim for relief.

## V.    CONCLUSION

For the reasons stated, the Court grants HHA's motion to dismiss in its entirety.

Quamar's claims against HHA and Lewis are **DISMISSED WITHOUT PREJUDICE**.

Final judgment will enter separately.

SIGNED at Houston, Texas, this 8th__ day of May 2024.

_George C. Hanks Jr_
GEORGE C. HANKS, JR.
United States District Judge

16 / 16